UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| FIDELITY AND GUARANTY LIFE INSURANCE COMPANY, *et al.*, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION NO. 02-CV-3629-WDQ |
| MYRON M. WEASELBOY, *et al.,* | : : : | |
| Defendants. | : | |

**DEFENDANT SINGER ASSET FINANCE
COMPANY, L.L.C.'s MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**Preliminary Statement**

Defendant Singer Asset Finance Company, L.L.C. ("Singer") holds a money judgment against Defendant Myron Weaselboy ("Weaselboy") from a Florida state court. Singer sought to satisfy that judgment by garnishing payments under an annuity contract owned by Defendant Fidelity & Guaranty Assignment, L.L.C. ("F&G Assignment"), issued by Plaintiff Fidelity and Guaranty Life Insurance Company ("F&G Life"), and payable to Weaselboy. F&G Life, claiming that it was unsure whether to honor the Florida garnishment proceedings or to make scheduled annuity payments to Weaselboy, filed this Interpleader Action seeking the Court's determination as to whom it should make future annuity payments.

F&G Assignment does not make any claim to the annuity payments at issue in this Interpleader Action, [s*ee* F&G Assignment Answer and Cross Claim], leaving Singer and Weaselboy as the only claimants to the interpleader *res*. [*See* Singer Answer and Cross Claim and Weaselboy's "Letter Answer."] Singer now moves for summary judgment pursuant to Fed. R. Civ. P. 56 on the issues and claims raised in the Complaint and in Count I of its Cross Claim.

As a matter of well-established law, Singer's judgment against Weaselboy is entitled to the full faith and credit of this Court and must be given the same preclusive effect as would be accorded the judgment by the Florida courts. *See* 28 U.S.C. §1738; <u>Heckert v. Dotson</u>, 272 F.3d 253, 257 (4th Cir. 2001). Under Florida law, the doctrines of *res judicata* and/or collateral estoppel bar Weaselboy's claims to the annuity payments sought by Singer in this action. Accordingly, Singer is entitled to summary judgment, which (i) awards to Singer all payments paid by F&G Life into the Registry of the Court and (ii) directs F&G Life to make future payments under the annuity to Singer until satisfaction of its judgment against Weaselboy.

## Background

**A.    The Structured Settlement Agreement and the Annuity**

Under the terms of a structured settlement agreement and release dated March 23, 1992 (the "Structured Settlement Agreement"), Ingersoll-Rand Company ("Ingersoll") was required to make monthly payments to Weaselboy of $286.79 per month for life, with payments guaranteed for at least twenty years. [Affidavit of Kenneth R. Barnett ("Barnett Aff.") at ¶4 and Exhibit A thereto at §8B(1)d.] Ingersoll assigned its payment obligation to Weaselboy under the Structured Settlement Agreement to F&G Structures, Inc. ("F&G Structures") pursuant to a Uniform Qualified Assignment dated as of April 9, 1993 (the "Qualified Assignment"). [*Id.* at ¶5 and Exhibit B thereto.]

To fulfill its payment obligation to Weaselboy, F&G Structures purchased an annuity contract, No. I634331, from F&G Life (the "Annuity"). [Complaint at ¶12; Barnett Aff. at ¶6 and Exhibit C thereto.] Under the Annuity, F&G Life is obligated to make monthly payments to Weaselboy of $286.79 per month for life, with payments guaranteed for at least twenty years.

[Barnett Aff. at ¶6 and Exhibit C thereto.]  F&G Assignment is the successor to F&G Structures, and is the owner of the Annuity.  [*Id.* at ¶6; *see also* Answer of F&G Structures at ¶12.]

**B.      The Purchase Agreements**

On or about August 14, 1998 and October 29, 1998, Weaselboy entered into separate "Purchase Agreements" with Singer.  Under the Purchase Agreements, Singer purchased for good and valuable consideration all of Weaselboy's right, title and interest in certain payments (collectively, the "Assigned Payments") consisting of (i) seventy two consecutive monthly payments in the amount of $286.79 under the Settlement Agreement, the Qualified Assignment, and the Annuity, commencing with the payment due October 1, 1998 and ending with the payment due September 1, 2004 and (ii) seventy eight consecutive monthly payments in the amount of $286.79 under the Settlement Agreement, the Qualified Assignment, and the Annuity, commencing with the payment due October 1, 2004 and ending with the payment due March 1, 2011.  [Barnett Aff. at ¶¶7-8 and Purchase Agreements, Exhibits D and E to Barnett Aff., at "Terms Rider," ¶3.]

Under the Purchase Agreements, Weaselboy granted to Singer a continuing perfected security interest in all of the payments under the Settlement Agreement, the Qualified Assignment, and the Annuity (the "Assigned Assets" or the "Collateral").  [*Id.* at ¶9 and Exhibits D and E at §2.] As part of the Purchase Agreements, Weaselboy also executed (i) an Absolute Assignment and Waiver of Claim, under which Weaselboy released any rights, claims, or interest in the Assigned Payments; (ii) Notices of Direction of Payments (the "Notices"), in which he directed that the Assigned Assets be sent to the payment address set forth in the Notices; and (iii) a Special Irrevocable Power of Attorney, granting Singer the sole and exclusive power and right to change the payment instructions with regard to the Assigned Assets.  [*Id.* at ¶10 and Exhibits

3

D and E at Exhibits K, H, I.] In connection with the Purchase Agreements, Singer filed one or more UCC-1 Financing Statements, as necessary, which named Weaselboy as Debtor, and duly perfected Singer's security interest in the Assigned Assets as collateral. [*Id.* at ¶11 and Exhibits D and E at Exhibit N.]

Under the terms of the Purchase Agreements, Weaselboy agreed, among other things:

- Not to make any change in the payment instructions with regard to the Assigned Assets, and to immediately deliver to Singer any checks, funds, or other forms of payment received on account of or in connection with the Assigned Payments. [*Id.* at ¶12 and Exhibits D and E at §§5d, f.]

- That in the event any of the Assigned Payments were ever denied, diverted, set-off, delayed, or withheld from Singer by virtue of any act or omission of Weaselboy or any person acting through him, to pay to Singer within ten days of demand the entire balance of the unpaid Assigned Payments, plus interest. [*Id.* at ¶13 and Exhibits D and E at §5f.]

- To pay all of Singer's reasonable costs and expenses of collection, including, without limitation all attorney's fees and expenses, relating directly or indirectly to the enforcement by Singer of any provision of the Purchase Agreements. [*Id.* at ¶14 and Exhibits D and E at §7.]

- That Florida's courts would have personal jurisdiction over him and that venue would be proper in Palm Beach County, Florida in the event of his default under the Purchase Agreements. [*Id.* at ¶15 and Exhibits D and E at §23.]

**Undisputed Facts**

Contrary to the express terms of the Purchase Agreements, Singer did not receive the Assigned Payments due to it from April 1999 forward in a timely manner. [*Id.* at ¶16.] Instead, and in breach of the Purchase Agreements, Weaselboy failed to furnish to Singer such Assigned Payments, or otherwise failed to take any steps to provide Singer with the benefit of its bargain, despite Singer's demands that he do so. [*Id.*]

As a result of Weaselboy's wrongful actions, Singer commenced an action against Weaselboy in the Circuit Court of the 15th Judicial District in and for Palm Beach County, Florida, captioned *Singer Asset Finance Company, L.L.C. v. Myron M. Weaselboy*, Case No. CL 00-7049 AF (Fla. Cir. Ct., 15th Cir.) (the "Florida Action"). [*Id.* at ¶17; *see also* Complaint filed in the Florida Action, Exhibit F to Barnett Aff.] Singer's Complaint in the Florida Action contained seven Counts, sounding in breach of contract, injunctive relief, conversion, unjust enrichment, fraud and misrepresentation, constructive trust and declaratory judgment. [*Id.* at Exhibit F.]

Weaselboy was personally served with proper process in the Florida Action, but failed to appear or otherwise defend against the claims made by Singer. [*Id.* at ¶18; and Affidavit of Service upon Weaselboy, Exhibit G to Barnett Aff.] Accordingly, a default judgment was entered against Weaselboy and in favor of Singer in the Florida Action (the "Florida Judgment"). [*Id.* at ¶18 and Florida Judgment, Exhibit H to Barnett Aff.] The Florida Judgment expressly provides, among other things:

> 2. That . . . Singer . . . shall have and recover from [Weaselboy] the principal sum of $41,297.76, plus costs in the sum of $281.00, which are now taxed against [Weaselboy] and attorney's fees in the sum of $1,050.00 for a total sum due and owing from [Weaselboy] to [Singer] of $42,628.76, which shall

> bear interest at the rate of 10% per annum, for which total sum let execution issue.
>
> 3. Singer may levy on any structured settlement payments due to [Weaselboy] from [F&G Structures] under the structured settlement agreement dated March 22, 1992 funded by the guaranteed investment contract bearing contract number I634331 owned by [F&G Structures] and issued by [F&G Life].

[*Id.* at Exhibit H.]

Singer sought to garnish payments under the Annuity in order to satisfy the Florida Judgment, and thus commenced execution proceedings in the Florida Action. [*Id.* at ¶19.] A Writ of Execution was issued in the Florida Action and properly served upon the Florida Commissioner of Insurance as agent for F&G Life on December 12, 2000. [*Id.* at Writ of Execution and Certificate of Service of the Writ of Execution upon the Florida Insurance Commissioner, Exhibit I.] Before any portion of the Florida Judgment could be satisfied, F&G Life commenced this Interpleader Action. [*Id.* at ¶20.]

### Legal Argument

### POINT I

### THE SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a defendant may move for summary judgment on any part of the plaintiff's claim and/or its cross claim against the other defendant(s). Fed. R. Civ. P. 56(a), (b). Such a motion and judgment are appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Fourth Circuit has explained:

> summary judgment should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.

*Miller v. Federal Deposit Ins. Corp*, 906 F.2d 972, 973-74 (4th Cir. 1990).

Not just any factual dispute that exists, even if genuine, will defeat a motion for summary judgment; a motion for summary judgment is properly granted so long as there are no "material" disputes of fact. Thus, as the Supreme Court has held:

> [b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (emphasis in original). A factual dispute is material only when the resolution of that dispute might affect the outcome of the case. *Id.* Thus, "irrelevant or unnecessary" factual disputes are insufficient to permit a question to go to the jury. *Id.* Where parties agree upon or stipulate to the facts, summary judgment is especially appropriate. 10A C. Wright, A. Miller Federal Practice & Procedure § 2725 at 83 (2d ed. 1983).

Where no dispute of material fact exists, summary judgment should be granted if the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On such a motion, the court's inquiry is whether "legal theory or doctrine supports the movant's position that judgment should be entered." 10A C. Wright, A. Miller Federal Practice & Procedure § 2725 at 111-12 (2d ed. 1983). Of course, the court is not confined solely to those legal theories and doctrines advanced by the moving party. *Id.* at 112.

In determining whether the moving party is entitled to summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1386 (1986). If even after applying that standard, no material disputes of fact exist and the moving party is entitled to judgment as a matter of law, the court must grant the motion. *Id.*

**POINT II**

**APPLICATION OF THE DOCTRINES OF *RES JUDICATA* AND/OR COLLATERAL ESTOPPEL REQUIRE A FINDING THAT SINGER'S FLORIDA JUDGMENT AGAINST WEASELBOY, IS ENTITLED TO THE FULL FAITH AND CREDIT OF THIS COURT**

A federal court, as a matter of full faith and credit under 28 U.S.C. § 1738, must give a state court judgment the same preclusive effect "as the court of such State" would give it. *See* Heckert v. Dotson, 272 F.3d 253, 257 (4th Cir. 2001); In re Genesys Data Techs., Inc., 204 F.3d 124, 129 (4th Cir. 2000). The statute provides, in pertinent part, that:

> Such acts, records and judicial proceedings or copies thereof, … shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law on usage in the court of such State, Territory or Possessions from which they are taken.

*Id.*

In accordance with the statute's mandate, the federal courts have consistently applied the doctrines of *res judicata* and collateral estoppel to bar re-litigation of claims and issues previously decided by state courts. *See* Kremer v. Chemical Const. Corp., 456 U.S. 461, 467 n. 6 (1982) (citing cases). Under *res judicata*, or "claim preclusion," a final judgment on the merits of an action precludes the parties or those in privity with them from re-litigating issues that were or could have been raised in that action. Allen v. McCurry, 449 U.S. 90, 94 (1980). Under collateral estoppel, or "issue preclusion," once a court decides an issue of fact or law necessary to its judgment, that decision precludes re-litigation of the same issue on a different cause of action between the same parties. Montana v. United States, 440 U.S. 147, 153 (1979); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5 (1979). 28 U.S.C. §1738 requires application of both doctrines. University of Tennessee v. Elliott, 478 U.S. 788, 796 (1986).

The Supreme Court has made it clear that in applying 28 U.S.C. §1738, a federal court must "refer to the preclusion law of the State in which the judgment was rendered." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Under the law of Florida, the State in which the Florida Judgment was entered, a default judgment properly supports the application of *res judicata* or collateral estoppel in a subsequent action involving the same parties and issues. See *AGB Oil Co. v. Crystal Exploration And Production Co.*, 406 So.2d 1165, 1167 (Fla. Ct. App. 3d Dist. 1981), *rev. denied*, 413 So.2d 875 (Fla. 1982) ("This principle of *res judicata* applies as well to default judgments") (citation omitted); *In re Itzler*, 247 B.R. 547, 550 (Bankr. S.D. Fla. 2002) ("a pure default satisfies the 'fully litigated' element of collateral estoppel under Florida law"); *In re Green*, 262 B.R. 557, 562-63 (Bankr. M.D. Fla. 2001).[1] In this Interpleader Action, Weaselboy seeks to re-litigate in federal court claims and/or issues that he has already lost in the Florida Action under the Florida Judgment. Accordingly, Florida's preclusion law bars his claims, and entitles Singer to summary judgment. 28 U.S.C. §1738.

    A.    <u>*Res Judicata*</u>

For the application of *res judicata*, Florida requires the presence of four factors: (i) identity of the thing sued for; (ii) identity of the cause of action; (iii) identity of the parties; and (iv) identity of the quality in the person for or against whom the claim is made. See *Casines v. Murchek*, 766 F.2d 1494, 1495 (11th Cir. 1985) (applying Florida law). All four factors are present here.

The first factor is satisfied because "the thing sued for" both here and in the Florida Action is payments under the Annuity that are due to Singer under the terms of the Purchase Agreements. [*Compare* pleadings filed in this Action and Singer's Complaint in Florida Action,

---

[1] *But see* <u>*In Re Rubin*</u>, 2000 WL 387657 (Bankr. S.D. Fla. 2000).

Barnett Aff. at Exhibit F; *see also* Florida Judgment, Barnett Aff. at Exhibit H.]

Factor number two -- whether the cause of action is the same -- is established under Florida law by showing that the facts or evidence necessary to maintain the suit are the same in both actions. See <u>Gold v. Bankier</u>, 840 So.2d 395, 397 (Fla. Ct. App. 4th Dist. 2003) (citations omitted). This factor is present here, as well. In each case, the question to be decided is who, as between Singer and Weaselboy, is entitled to payments under the Annuity. In each case, the same facts and evidence decide that question. Moreover, the factual allegations of the Complaint filed in the Florida Action and Singer's Answer and Cross Claim in this Action are substantively identical. [*Compare* Singer's Answer and Cross Claim and Singer's Complaint in Florida Action, Barnett Aff. at Exhibit F; *see also* Weaselboy's Letter Answer.]

Finally, factors three and four are satisfied because Weaselboy and Singer are both parties, in the same capacity, in this Interpleader Action and the Florida Action.[2]

This Court is bound to give "the same effect to the [Florida J]udgment as the rendering court would have given it." <u>Heckert</u>, 272 F.3d at 259. As shown above, all of the elements of *res judicata* under Florida law are present in this matter. *Casines,* 766 F.2d at 1495. Since Weaselboy has not – indeed cannot – come forth with any material facts to alter that result, this Court should enter summary judgment in favor of Singer and against Weaselboy. Fed. R. Civ. P. 56(c).

**B.    Collateral Estoppel**

The following elements must be established to invoke collateral estoppel under Florida law: (i) the issue is identical to the one decided in the prior litigation; (ii) the issue was actually litigated in the prior proceeding; (iii) the prior determination of the issue was a critical and

---

[2]  F&G Assignment is only a nominal Defendant in this Action. Although it was named as a party, it makes no claim to the interpleader *res*. [*See* F&G Assignment's Answer and Cross Claim.]

necessary part of the judgment in that earlier decision; and (iv) the standard of proof in the prior action must was at least as stringent as the standard of proof in the later case. *In re Yanks,* 931 F.2d 42, 43 n. 1 (11th Cir.1991); *Mobil Oil Corp. v. Shevin,* 354 So.2d 372, 374 (Fla.1977). Each of these elements is present here, as well.

The central issue forming the basis of each suit is whether it is Singer or Weaselboy who is entitled to receive the Annuity payments purchased by Singer under the term of the Purchase Agreements. [*Compare* pleadings filed in this Action and Singer's Complaint in Florida Action, Barnett Aff. at Exhibit F.] That issue was "actually litigated" in the Florida Action, *In re Itzler*, 247 B.R. Bankr. 547, 550 (S.D. Fla. 2002), and the determination of that issue was a critical and necessary part of the Florida Judgment. [*See* Complaint in the Florida Action, Barnett Aff. at Exhibit F.] Finally, the standard of proof in the Florida Action, sounding in breach of contract, injunctive relief, conversion, unjust enrichment, fraud and misrepresentation, constructive trust, declaratory judgment, is at least as stringent as in this action.

As with respect to *res judicata*, Weaselboy has not and cannot come forward with any material facts that would properly support a departure from the doctrine of collateral estoppel in this Action. That doctrine precludes re-litigation of the issue of who is entitled to the disputed Annuity payments. The Florida Judgment (i) awards Singer money damages, and (ii) declares that Singer may satisfy that damage award from future payments under the Annuity. Under 28 U.S.C. §1738 and Fed. R. Civ. P. 56(c), this Court should award Singer summary judgment giving effect to the Florida Judgment.

**Conclusion**

For all of the foregoing reasons, Defendant Singer Asset Finance Company, L.L.C. respectfully requests that this Court grant its Motion for Summary Judgment.

Dated: August 5, 2003                                   Respectfully submitted,

NEUBERGER, QUINN, GIELEN, RUBIN
& GIBBER, P.A.

                                       /s/
By:_____
Price O. Gielen, Bar No. 00577
Jason M. St. John, Bar. No. 26384
27th Floor
One South Street
Baltimore, Maryland 21202
(410) 332-8550

Of Counsel:
Paul McDonald
Bernstein, Shur, Sawyer & Nelson, P.A.
100 Middle Street, West Tower
P.O. Box 9729
Portland, Maine 04104-5029
(207) 774-1200

Attorneys for Defendant
Singer Asset Finance Company, L.L.C.

187661
1922.11